ROBERT Z. COLLINGS, TRUSTEE, RESPONDENT, v. WAL-
TER ALLEN, APPELLANT.

Submitted November 24, 1916—Decided March 5, 1917.

A subscription to the stock of a proposed corporation, to be organ-
ized under a specified name and for certain designated purposes,
imposes no obligation upon the subscriber to take stock in a
company afterward organized by the same promoters under the
same corporate name, but for radically different purposes.

On appeal from the Burlington Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCH-
ARD and BLACK.

For the appellant, *Martin V. Bergen* and *V. Claude
Palmer*.

For the respondent, *Joseph Beck Tyler*.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action was brought by
Collings, the trustee of "The Ottomobile Company," a cor-
poration of New Jersey, adjudicated a bankrupt by the
United States District Court, upon a stock subscription
signed by the defendant, of which the following is a copy:
"Subscription to preferred stock of the Ottomobile Company,
par value $100 per share. September 25th, 1911. I hereby
subscribe to four shares of the par value of $100 per share
of the six per cent. preferred stock of the Ottomobile Com-
pany, a corporation to be organized under the laws of the
State of New Jersey with an authorized capital of $250,000,
six per cent. preferred, and $250,000 common stock, one share
of common stock to be given as a bonus with each two shares
of preferred. The purpose of the organization is to acquire
the automobile interests of the Otto Gas Engine Works of

Philadelphia, and the entire assets and good will of the Otto Motor Car Sales Company of Philadelphia. I agree to pay for such stock as follows," and then follows the dates and amounts of the payments.

The case was tried before the court without a jury, and resulted in a finding in favor of the plaintiff for the par value of four shares of the preferred stock, and two shares of the common stock of the bankrupt corporation, with interest upon the same from the date when, according to the finding of the court, the defendant was obligated to take the stock. From the judgment entered on this finding the defendant appeals.

The company of which the plaintiff is the representative was organized under the corporation laws of this state in January, 1912. The principal purposes of its incorporation, as set forth in the certificate filed by it, were to manufacture automobiles, automobile and motor car accessories and supplies of every class and description, including any and all parts of vehicles of all kinds, or any other goods pertaining to the automobile business, or otherwise, which the corporation may determine to manufacture. To buy, sell and deal in automobiles, automobile and motor car accessories and supplies of every class and description as manufacturers, agents, jobbers, wholesale or retail, on commission or consignment or otherwise, including any and all parts of vehicles of all kinds, or any other goods pertaining to the automobile business, or otherwise, in which the corporation may determine to deal. To carry on the business of mechanical engineers, and dealers in and manufacturers of plants, motors, engines, and other machinery. To buy, sell, manufacture and deal in machinery, implements, rolling stock and hardware of all kinds. To build, construct and repair railroads, water, gas and electric works, tunnels, bridges, viaducts, canals, hotels, wharves, piers, or any like work of internal improvement, public use or utility. To manufacture, purchase, or otherwise acquire goods, merchandise and personal property of every class, and to hold, own, mortgage, sell or otherwise dispose of, trade, deal in and deal with the same. To borrow

or raise money without limit as to amount by the issue of, or upon, warrants, bonds, debentures and other negotiable or transferable instruments, or otherwise.

Other purposes are also specified in the certificate of incorporation; we do not find it necessary, however, to recite them. It is enough to say that the purposes for which the bankrupt corporation was organized are not only far different from, and far more comprehensive, than those for which the proposed company referred to in the defendant's subscription contract was to be organized, but that they do not any of them necessarily embrace either of the two purposes expressed in that contract, namely, the acquisition of the automobile interests of the Otto Gas Engine Works of Philadelphia, and the entire assets and good will of the Otto Motor Car Sales Company of Philadelphia.

The case was decided below, and is argued here on behalf of the respondent, upon the theory that the appellant by signing the subscription contract became a *quasi* stockholder in the proposed company, and that having stood by without protest and permitted the organizers of the now bankrupt corporation to incorporate it for purposes entirely different from those which were originally proposed, he is deemed to have acquiesced in the change, and to be bound by their acts. But, clearly, the position of the appellant was not that of a *quasi* stockholder acquiescing in the proposal of his fellow stockholders to divert his and their moneys to purposes other than those to which they were agreed to be appropriated at the time he signed the subscription. His contract, and that of his fellow subscribers, was to take specified shares in a New Jersey corporation to be thereafter organized, having a specified name, a specified amount of capital stock, and to be created for the purpose of carrying into effect certain specified objects. The name of the intended corporation was, of course, of secondary importance. That it should be organized under the laws of the State of New Jersey, and so be clothed with all the powers, and receive all the protection afforded by those laws, was of primary importance. So, too, was the amount of the capital stock. But even more im-

portant was the purpose to which the moneys of the gentlemen who signed these subscription certificates was to be devoted. They became subscribers upon the express condition that their money should be used for the specific purposes set out in the contract signed by them, and for such ancillary purposes as were necessary or reasonable. They never agreed to embark their money in any such schemes as are exhibited by the certificate of incorporation of the company of which the plaintiff is the trustee, and, consequently, had no interest in the formation of a company to exploit those schemes. Their acquiescence or non-acquiescence in the organization of such a corporation was entirely immaterial, so far as the power of the promoters to create it for the purposes specified in its certificate of incorporation was concerned; and their protest against such action would have been entirely unavailing; for the intended promoters were at perfect liberty to embark their own capital, and the capital of anyone else who desired to join them in floating any scheme which they saw fit to inaugurate, without the let or hindrance of persons who had no interest therein. So, too, they had a right to adopt the name which was proposed for the corporation intended to be organized for the purposes expressed in the subscription contract which the appellant signed; for no right to that name had vested in him and his fellow subscribers, and could not do so until the corporation in which they had expected to invest their money had actually been formed.

The obligation of the defendant and his fellow subscribers is expressed within the four corners of the instrument which is the foundation of the present suit. The fact that the promoters of the intended corporation saw fit to abandon the original purposes thereof, and organize a company the purposes of which were radically different in every respect, could not alter the fundamental contract of Mr. Allen and his associates, and impose upon them an obligation to invest their moneys in the new scheme. We conclude, therefore, that the judgment under review must be reversed.